IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-01365-SKC-MDB

CITIZENS PROJECT,
COLORADO LATINOS VOTE,
LEAGUE OF WOMEN VOTERS OF THE PIKES PEAK REGION, and
BLACK/LATINO LEADERSHIP COALITION,

    Plaintiffs,

v.

CITY OF COLORADO SPRINGS, and
SARAH BALL JOHNSON, in her official capacity as City Clerk,

    Defendants.

## ORDER DENYING PLAINTIFFS' MOTION
## TO ALTER OR AMEND JUDGMENT (DKT. 95)

The above-referenced Motion is fully briefed and now before the Court. *See* Dkt. 96 (Defendants' Opposition); Dkt. 97 (Plaintiffs' Reply). The Motion asks this Court to reconsider its prior Order Dismissing Plaintiffs' Claim For Lack of Article III Standing and Finding as Moot Defendants' Motion for Summary Judgment (Dkt. 93). The Court denies the Motion because it is not supported by an intervening change in the controlling law, new evidence previously unavailable, or a need to correct clear error or prevent manifest injustice.

1

## STANDARD OF REVIEW

A motion under Fed. R. Civ. P. 59(e) is the appropriate vehicle "to correct manifest errors of law or to present newly discovered evidence" bearing on a judgment or other court order. *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (quotations and citation omitted). In the Tenth Circuit, grounds for a motion to reconsider under Rule 59(e) can include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). Thus, a motion to reconsider is "appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* These motions are not to be used as a vehicle for "revisit[ing] issues already addressed or advanc[ing] arguments that could have been raised in prior briefing." *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)). A motion for reconsideration "is an extreme remedy to be granted in rare circumstances." *Brumark*, 57 F.3d at 944. The decision to grant reconsideration is left to the sound discretion of the district court. *Id.*

## ANALYSIS

Plaintiffs raise two primary contentions to argue reconsideration of the Court's prior order is warranted. First, they contend the Court misapprehended that Defendants were making an affirmative Article III standing argument. Second, the

2

prior order addressed the Supreme Court's decision in *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024), which came out after full briefing but before the Court issued the prior order. Plaintiffs argue, "[g]iven *FDA's* centrality to the Order's analysis, reconsideration after fulsome briefing on *FDA* is appropriate."

Defendants argue reconsideration is not warranted because Plaintiffs present no newly discovered evidence, cite no intervening change in controlling law, and identify no clear error. They further argue the Court correctly noted the parties' argument over Article III standing, including that Defendants did not concede Plaintiffs had such standing. And in any event, they argue a party is not excused from establishing standing simply because the opposing party didn't directly raise the issue. Regarding this Court's decision to address the Supreme Court's opinion in *All. For Hippocratic Med.* in the prior order, Defendants argue the Supreme Court opinion is not an intervening change in controlling law because it came out before the prior order and merely formed part of the basis for it.

### 1. Courts are Required to Address Article III Standing, Even *Sua Sponte*

To be clear, the Court did not pick the issue of Article III standing from the ethereal mist. While the parties may have given short shrift to the importance of the question of Plaintiffs' Article III standing, Plaintiffs argued in their opposition to Defendants' motion for summary judgment that they "have both Article III and statutory standing to pursue their claim." Dkt. 62, p.8. And Defendants made clear

in their reply that they did not concede Plaintiffs' Article III standing. Dkt. 63, ECF p.4, §I(A), ECF p.5 §I(B).

The law is clear that a court is required to consider the issue of Article III standing, even *sua sponte*, and particularly when the record reveals a colorable standing issue. *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 n.5 (10th Cir. 2021) ("The Alliance contends this court cannot consider standing relative to its constitutional claims because the district court concluded the Alliance satisfied the standing threshold and the United States did not file a cross-appeal. This argument ignores well-established, black-letter law. The issue of Article III standing implicates federal jurisdiction and is a matter this court *must* consider *sua sponte*.") (italics in original) (citing *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 942 (10th Cir. 2003); *In re Peeples*, 880 F.3d 1207, 1212 (10th Cir. 2018) ("Article III standing is jurisdictional; thus, where the record reveals a colorable standing issue, we have a duty to undertake an independent examination (*sua sponte* if necessary) of that issue.") (cleaned up); *Rector*, 348 F.3d at 942 ("Standing, however, raises jurisdictional questions and we are required to consider the issue *sua sponte* to ensure that there is an Article III case or controversy before us.") (cleaned up); *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002) ("Although the question of plaintiffs' standing was not addressed below, standing is a jurisdictional issue, and we are obligated to raise the issue *sua sponte* to ensure that there is an Article III case or controversy.").

The record before the Court on its prior order presented a colorable Article III standing issue, which the parties referenced in their briefing. Indeed, Plaintiffs expressly contended they had Article III standing. Dkt. 62, p.8. And many of the parties' arguments and proofs concerning statutory standing dovetailed with the issue of Plaintiffs' Article III standing. *See, e.g.,* Dkt. 63, ECF p.4 (Defendants arguing Plaintiffs' claimed interest for statutory standing purposes "does not even satisfy Article III."); ECF p.5 (arguing "[e]ven if that might support Article III standing—which the City does not concede[.]).

The Court does not find Plaintiffs were deprived of an opportunity to argue their Article III standing or to present evidence on the question. The fulsome arguments, briefing, and evidence presented by the parties on the summary judgment record and the statutory-standing question were materially relevant to the issue of Plaintiffs' Article III standing. Moreover, it was always Plaintiffs' burden to establish their Article III standing. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.") (citation omitted). Under these circumstances, the Court's decision to address Plaintiffs' Article III standing, even assuming done *sua sponte*, does not provide an appropriate basis for reconsideration of the prior order. *See Servants of the Paraclete*, 204 F.3d at 1012.

### 2. The Court's Discussion of *All. for Hippocratic Med.* in the Prior Order

Plaintiffs argue reconsideration is appropriate to allow "fulsome briefing" by the parties over the Court's discussion in the prior order of the Supreme Court's opinion in *All. for Hippocratic Med.*, which was issued after full briefing but before the prior order. The Court disagrees for two reasons.

First, as Defendants correctly point out, *All. for Hippocratic Med.* does not constitute an intervening change in controlling law because it came out before the Court's prior order. *See Casale v. Ecolab Inc.*, No. 2:21-CV-00126-NT, 2022 WL 1910126, at *3 (D. Me. June 3, 2022) ("An 'intervening change in the controlling law' is a change that happens *after* a district court has issued its decision (i.e., between the time of the order and the 59(e) motion), not one that happens in the middle of briefing."); *see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 568 n.3 (5th Cir. 2003) (decision that issued five months before district court order—and after briefing had been completed—could not constitute an intervening change in the law).

Second, *All. for Hippocratic Med.* was not a change in the law. In the underlying briefing and their response to Defendants' motion for summary judgment, Plaintiffs argued (in a footnote):

> Plaintiffs have both Article III and statutory standing to bring their claim under § 2 of the VRA. It appears that the City concedes that Plaintiffs have Article III standing and limits its argument on standing to the contention that Plaintiffs lack statutory standing. It is long established that an organization has standing in its own right where there is "demonstrable injury to the organization's activities—with the consequent drain on the organization's resources." *Havens Realty Corp.*

6

> *v. Coleman*, 455 U.S. 363, 379 (1982). Numerous courts have recognized this diversion-of-resources injury for the purpose of standing for voter engagement organizations like Plaintiffs here. *See Common Cause Ind. v. Lawson*, 937 F.3d 944, 952-55 (7th Cir. 2019) (collecting cases).

Dkt. 62, p.8 n.1.[1] This Court's prior order discussed *All. for Hippocratic Med.* finding the opinion "susses out the narrow scope of the diversion-of-resources injury claimed by Plaintiffs here" for purposes of organizational standing (Dkt. 93, pp.14-15), and noted the Supreme Court's caution that *Havens* was an unusual case which the high court expressed it had been careful not to extend beyond its context (*id.* at p.10). The decision in *All. for Hippocratic Med.*, thus, did not alter or reverse the body of precedent and persuasive authorities relied on in the prior order. *See, e.g., United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505, 513 (6th Cir. 2010) ("Far from being an intervening change in the law, this [purported change] formed part of the basis for the district court's decision...."); *Schiller*, 342 F.3d at 568 n.3 (finding circuit precedent issued before the district court's ruling did not change the applicable law but merely confirmed applicable law).

For these reasons, the Court does not find the prior order's discussion of *All. for Hippocratic Med.* is an appropriate basis to reconsider that order.

* * *

---

[1] In *Havens*, the Supreme Court examined standing under the Fair Housing Act consonant with the full limits of Article III standing. *Id.*, 455 U.S. at 372-73.

7

Plaintiffs do not expressly argue that reconsideration is warranted because of an intervening change in the controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete*, 204 F.3d at 1012. And the Court does not find any of these reasons exist to support reconsideration. As a result, the Motion is DENIED.[2]

DATED: March 25, 2025

BY THE COURT:

_____
S. Kato Crews
United States District Judge

---

[2] The Court does, however, clarify a few points from the prior order. First, it appreciates Plaintiffs' clarification regarding their prior argument which the Court characterized as "reckless and untrue." The Court understands Plaintiffs take their ethical obligations seriously and the air is now cleared on that issue with the Court's thanks. Second, when in its prior order the Court found Plaintiffs appear to have manufactured their own standing, the Court attributes no bad faith on Plaintiffs' part regarding that finding. And third, the Court agrees with Defendants that "[w]hile [Plaintiffs'] views may be sincere, even admirable" (Dkt. 96, ECF p.17) (cleaned up), the threshold issue in this Court's view was one of Article III standing.